## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

316, INC.,

     Plaintiff,

vs.                         CASE NO. 3:07cv528/RS/MD

MARYLAND CASUALTY COMPANY,

     Defendant.

_____/

## ORDER

Before me are Defendant's Motion for Summary Judgment (Doc. 55),

Plaintiff's Response and Memorandum of Law in Opposition to Defendant's

Motion for Summary Judgment (Docs. 58 and 59), and Plaintiff's Statement of

Facts in Opposition to Summary Judgment (Doc. 60).

### I. STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary

judgment should be granted when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265

(1986).  The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quoting Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e)).  A factual dispute is "'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251, 106 S. Ct. at 2512.  The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115

(11th Cir. 1993); *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

Thus, "[i]f reasonable minds could differ on the inferences arising from undisputed

facts, then a court should deny summary judgment." *Miranda v. B & B Cash*

*Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank*

*& Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).  However,

"[a] mere 'scintilla' of evidence supporting the [nonmoving] party's position will

not suffice; there must be enough of a showing that the jury could reasonably find

for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing

*Anderson*, 477 U.S. at 251, 106 S. Ct. at 2511).

In this case, the court's jurisdiction is based upon diversity, 28 U.S.C. §

1332, and this case arises under Florida law.  In diversity cases arising under

Florida law, a federal court is bound by the law articulated by the Florida Supreme

Court.  *See Shapiro v. Associated Int'l Ins. Co.,* 899 F.2d 1116, 1118 (11th

Cir.1990).  If the Florida Supreme Court has not spoken on an issue, Florida

District Courts of Appeal decisions control absent persuasive indication that the

Florida Supreme Court would rule otherwise. *See Blanchard v. State Farm Mut.*

*Auto. Ins. Co.,* 903 F.2d 1398, 1399 (11th Cir.1990). If there is no authority, this

Court is to make an "educated guess" as to how a Florida court would rule. *See*

*Shapiro,* 899 F.2d at 1118-19.

## II. FACTS

This case involves a dispute over damage to commercial property owned by Plaintiff 316, Inc. ("316") and insured by Defendant Maryland Casualty Company ("Maryland").  When the parties could not agree on the amount of 316's loss, Maryland invoked its right to appraisal under the insurance contract, following which 316 filed a Civil Remedy Notice of Insurer Violation with the Florida Department of Financial Services, demanding payment of the insurance contract within sixty days.  Maryland did not pay within sixty days, but instead waited for the outcome of the appraisal process.  Eventually, an umpire determined the amount of 316's loss and Maryland promptly paid the appraisal award.  Seven weeks later, 316 filed suit in state court for civil remedy pursuant to §624.155 Florida Statutes, alleging "bad faith" on the part of Maryland in its contractual dealings with 316.  For the reasons that follow, Defendant's Motion for Summary Judgment is GRANTED, and Plaintiff's complaint is dismissed with prejudice.

### Background

On September 15, 2004, Hurricane Ivan damaged commercial property owned by 316 and insured by Maryland.  316 timely filed a proof of loss.  After assessing 316's claim, Maryland acknowledged coverage and paid $3.8 million over the course of seven months.  The parties could not agree on the total amount

of the loss. As a result, Maryland invoked its right to appraisal under the terms of

the insurance contract with 316 by letter dated June 10, 2005.  The appraisal

provision of 316's insurance contract states:

> Appraisal – If we and you disagree on the value of the property or
> the amount of loss, either may make written demand for an appraisal
> of the loss.  In this event, each party will select a competent and
> impartial appraiser.  The two appraisers will select an umpire.  If
> they cannot agree, either may request that selection be made by a
> judge of a court having jurisdiction.  The appraisers will state
> separately the value of the property and amount of loss.  If they fail
> to agree, they will submit their differences to the umpire.  A decision
> agreed to by any two will be binding.  Each party will:
> 1. Pay its chosen appraiser; and
> 2. Bear the other expenses of the appraisal and umpire equally.

One week later, on June 17, 2005, 316 filed a Civil Remedy Notice of Insurer

Violation with the Florida Department of Financial Services, alleging claim delay,

claim denial, unfair trade practice, and unsatisfactory settlement offer on the part

of Maryland.  On August 27, 2007, an appraisal award of nearly $6.8 million was

determined by a neutral umpire.  On September 18, 2007, Maryland paid in full the

net amount of the appraisal award, $2.7 million.

On November 8, 2007, 316 filed a complaint under the Florida Civil

Remedy Statute in the Circuit Court of Escambia County, Florida, asking for

"actual and compensatory damages, punitive damages, pre-judgment and post

judgment interest, costs, attorney fees and the disgorgement of all unlawful or

illegitimate monies Defendant profited from its bad faith claims handling practices

or unfair insurance claims practices, including, but not limited to any interest or

monies Defendant gained from such unlawful or illegitimate monies" under §

624.155 (Civil Remedy) and § 626.9541 (Unfair or Deceptive Acts or Practices

Prohibited) Florida Statutes.  Maryland timely removed the case.  316's request for

punitive damages was dismissed with prejudice.  (Doc. 47).

### III. ANALYSIS

Plaintiff's claim is entirely based upon Section 624.155, the Florida Civil

Remedy Statute, and not upon a theory of breach of contract.  Plaintiff asserts that

it is entitled to relief based on the language of § 624.155(8) Florida Statutes which

reads in pertinent part: "The damages recoverable pursuant to this section shall

include those damages which are a reasonably foreseeable result of a specified

violation of this section by the authorized insurer . . . ."  Plaintiff provides no legal

support for its claims to relief, however.  While Plaintiff would have me assess the

merits of its case by simply reading the text of the Civil Remedy Statute, there is

no way for a court to assess a bad faith claim under § 624.155 without evaluating

the contractual obligations of the parties.  A claim for bad faith failure to settle is

"founded upon the obligation of the insurer to pay when all conditions under the

policy would require an insurer exercising good faith and fair dealing towards its

insured to pay." *Vest v. Travelers Ins. Co.*, 753 So. 2d 1270, 1275 (Fla. 2000).  To

determine whether there was an obligation by the insurer to pay, a court must look

to the underlying policy to determine the obligation of the parties and to determine

whether there was bad faith in the handling of the claims.

In 1982, the Florida Legislature enacted Florida Statutes Section 624.155

which provides that a person can institute a civil action against an insurer when the

person is damaged by the insurer's failure to settle claims in good faith.  As a

condition precedent to bringing such an action, Florida's Department of Financial

Services and the insurer must be given sixty days written notice of the violation.

*See* § 624.155(2)(a), Fla. Stat. (2008).  No action will lie if, within those sixty

days, "the damages are paid or the circumstances giving rise to the violation are

corrected." *See* § 624.155(2)(d), Fla. Stat. (2008).  In *Talat Enters., Inc. v. Aetna

Cas. & Sur. Co.*, 753 So.2d 1278 (Fla. 2000), the Florida Supreme Court explained

that, "in creating this statutory remedy for bad-faith actions, the Legislature

provided this sixty day window as a last opportunity for insurers to comply with

their claim-handling obligations when a good-faith decision by the insurer would

indicate that contractual benefits are owed." *Id.* at 1284.  Furthermore, "the

purpose of the civil remedy notice is to give the insurer one last chance to settle a

claim with its insured and avoid unnecessary bad faith litigation – not to give the

insured a right of action to proceed against the insurer even after the insured's

claim has been paid or resolved." *Lane v. Westfield Ins. Co.*, 862 So. 2d 774, 779

(Fla. 5th DCA 2003).

### 1. "Bad Faith"

Critical to the elements of a bad faith cause of action are knowledge and/or

delay on the insurance company's part. At the point in time when liability has

become reasonably clear, failure to pay may subject the insurance company to a

judgment in excess of the policy limits. *See, e.g., Vest v. Travelers Ins. Co.*, 753

So. 2d 1270 (Fla. 2000) (requiring an insurer to exercise good faith and fair dealing

towards its insured); *see also Spencer v. Aetna Life & Cas. Ins. Co.,* 227 Kan. 914,

611 P.2d 149 (1980); *Anderson v. Continental Ins. Co.,* 85 Wis.2d 675, 271

N.W.2d 368 (1978); *Gruenberg v. Aetna Ins. Co.,* 9 Cal.3d 566, 108 Cal.Rptr. 480,

510 P.2d 1032 (1973). It is this delay in payment, without cause, that deprives the

insured of the benefit of the bargain. *Kanne v. Connecticut Gen. Life Ins. Co.,* 607

F. Supp. 899 (D.C.Cal. 1985) (citing *Austero v. National Gas Co.,* 84 Cal.App.3d

1, 30, 148 Cal.Rptr. 653, 672 (1978)).

Under Florida law, there is no mechanical standard for the span of time that

must pass before an insurer's failure to initiate settlement can be deemed bad faith.

*Snowden ex rel. Estate of Snowden v. Lumbermens Mut. Cas. Co.*, 358 F. Supp. 2d

1125 (N.D. Fla. 2003).  As a general rule, however, "[a]s the amount by which an anticipated claim exceeds policy limits increases, the amount of time before a prudent insurer would be expected to tender policy limits decreases." *Id*. at 1129.

The undisputed facts show that Maryland moved with reasonable promptness under the procedures provided by the insurance policy to resolve the insurance claim in a timely manner.  In less than two months, Maryland had issued its first check to 316 in the amount of $200,000.  Over the course of the next five months, Maryland issued at least four more checks and paid 316 over $3.8 million under the policy.  When it became clear that 316 and Maryland would not be able to agree on the amount of the loss did Maryland invoke its right to appraisal.  To be sure, this was a complicated claim to adjust.  The policy coverage was more than $10 million, and the damages were not easy to assess.

This is not the usual bad-faith claim where damages are obvious and it is clear that the damages will exceed policy limits, but the insurer insists on dragging out the payment process.  In this case, the amount finally awarded through the appraisal process was less than seventy-percent of the policy limit.  Even though Plaintiff claims that this amount is significant enough to prove bad faith on the part of the Defendant, I am not persuaded by the Plaintiff's argument.  The fact that Maryland had paid almost sixty-percent of the final award in advance of the

appraisal process suggests that Maryland was intent on upholding its side of the contract.  The fact that the appraisers found that Maryland owed more money to 316 does not, in and of itself, indicate bad faith on the part of Maryland.  As the Florida Supreme Court has said, "Even when it is later determined by a court or arbitration that the insurer's denial was mistaken, there is no cause of action if the denial was in good faith." *Vest*, 753 So. 2d at 1275.  Here, given the complicated nature of the claim and the large dollar amounts involved, it is reasonable that Defendant would demand appraisal when its assessment of damages was considerably below the policy limit.

### 2. The Civil Remedy Notice

A cause of action for bad faith failure to settle is premature unless there has been a determination of liability and extent of damages owed the insured under the first-party insurance policy. *Old Republic Nat. Title Ins. Co. v. HomeAmerican Credit, Inc.*, 844 So. 2d 818 (Fla. 5th DCA 2003); *Liberty Mut. Ins. Co. v. Farm, Inc.*, 754 So.2d 865 (Fla. 3rd DCA 2000) (statutory bad-faith claim against a property insurer premature, unripe, and subject to dismissal when first-party coverage dispute had not been fully resolved).  Similarly, an arbitration award is predicate or prerequisite under Florida law to initiating first-party "failure to settle" suit because a failure to settle cause of action does not accrue until conclusion of

underlying arbitration. *Talat Enterprises, Inc. v. Aetna Life & Cas.*, 952 F. Supp. 773, (M.D. Fla. 1996).  While it is an appraisal clause, not an arbitration clause, that is involved in this case, Florida courts have generally treated appraisal clauses as "narrowly restricted" arbitration provisions. *United States Fidelity & Guaranty Co. v. Romay,* 744 So.2d 467, 469 (Fla. 3d DCA 1999).

Again, this is not the usual bad-faith case where an insurer refused to pay the policy limits when the damages clearly exceed those limits.  Defendant had a contractual right under the insurance policy to demand appraisal when the two sides could not reach an agreement as to the amount of damages.  Since the extent of damages owed to Plaintiff under the policy was still legitimately in dispute, the bad-faith claim was premature. *Old Republic*, 844 So. 2d 818, 819.  While the law does not preclude the sending of the Civil Remedy Notice, a party cannot file a bad faith suit until there has been a determination of liability and extent of damages owed to the insured.

Of concern to me are the shortcomings in the Civil Remedy Notice and in the Plaintiff's pleadings. Plaintiff's Civil Remedy Notice was written in such general terms that it gave no actual notice of the specific actions that Defendant could have undertaken to cure it.  Additionally, Plaintiff has not stated in any of its pleadings the amount it contended Defendant should have paid to avoid bad-faith

litigation at the time the Notice was filed.  In its state court complaint, Plaintiff

merely alleges that "Maryland Casualty failed to pay the full amount owed under

the policy and otherwise failed to correct the circumstances within sixty days . . ."

From this statement, it is impossible to determine what amount Plaintiff was

demanding from Defendant at the time the appraisal was demanded.  Plaintiff

further contends in its Response in Opposition to Defendant's Motion for

Summary Judgment that before invoking the appraisal provisions of the policy,

Defendant had "more than sufficient information to determine what amounts were

due and owing to Plaintiff."  Plaintiff also alleges that "[b]ut for Defendant's

failure to attempt to settle the claim in good faith, it would not have been necessary

to go through the appraisal process and Plaintiff would not have incurred the

expense of same, which included the umpire and appraiser fees." Such conclusory

statements without specific facts to back them up are unhelpful to the court.  Since

the eventual appraisal award ended up being more than thirty-percent below the

policy's limit (more than $3.3 million below the policy limit), I am left to wonder

how the Defendant could have resolved the conflict with the Plaintiff, curing the

alleged violations of the bad-faith claim, other than by putting the matter in the

hands of an appraisal panel.  Based on Plaintiff's failure to provide any facts on

how Defendant could avoid a bad-faith lawsuit other than for Defendant to pay the

policy limits, I cannot find fault with the Defendant seeking an appraisal under the terms of the insurance contract.

The Florida Supreme Court has held that an insurer's appropriate response to a Civil Remedy Notice filed pursuant to § 624.155 is "based upon the insurer's good-faith evaluation of what is owed on the insurance contract." *Vest*, 753 So. 2d at 1275. The Court further stated, "What is owed on the contract is . . . governed by whether all conditions precedent for payment contained within the policy have been met." *Id*. For its part, an insurer "must evaluate a claim based upon proof of loss required by the policy and its expertise in advance of a determination by a court or arbitration." *Id.* at 1275-76. Under the insurance policy between 316 and Maryland, the conditions precedent for payment (agreement as to the amount of the loss) had not been met at the time 316 filed the Notice. Since Defendant could not agree with Plaintiff as to the amount of loss, Defendant agreed to be bound by the findings of an appraisal proceeding, a process that Defendant entered into pursuant to the terms of the insurance contract and, presumably, as a result of its 'expertise' in handling claims. It is important to note that Defendant demanded appraisal a week before the Notice was filed. Since the appraisal process to determine the extent of damages had already been initiated, it seems logical that the Defendant would want to see the process through instead of caving in to Plaintiff's vague

general demands in the Notice.  As a result, I find that Defendant's actions in

response to the Civil Remedy Notice to be appropriate.

      If I were to follow Plaintiff's line of reasoning in this case, I would be, in

effect, saying that an insurance company is acting in bad faith if it doesn't pay

whatever a plaintiff demands when the plaintiff files a Civil Remedy Notice.  This

is not the law.  If it were the law, it would make the appraisal process meaningless

because every insurer who tried to invoke the appraisal process would be faced

with the prospect of a bad-faith suit.  An insurance company is entitled to a final

determination of how much is owed under a policy before a bad-faith claim can be

brought against it so long as the insurer is not exercising its contractual rights to an

appraisal in an effort to delay inevitable payment. *See, e.g., Jones v. Continental

Ins. Co.*, 670 F. Supp 937, 945 ("It would be an illogical anomaly to permit an

insurance company to proceed to arbitration even though it knew prior to

arbitration that it had no reasonable defense to payment . . . .").  I find it telling that

Plaintiff did not file suit immediately after the sixty-day window afforded the

Defendant by the Notice had run.  Had Plaintiff truly believed the appraisal process

to have been initiated in bad faith, one would expect Plaintiff to have sought

judicial intervention to prevent Defendant from further harming Plaintiff's

interests.  Instead, Plaintiff awaited the conclusion of the appraisal, promptly

cashed Defendant's check for the full amount of the appraisal award, and then sued.  Based upon the facts presented to me in this case, I find that the Defendant's purpose for demanding an appraisal was not solely for the purpose of delaying inevitable payment, but rather was done for the legitimate purpose of assessing its obligations under the insurance contract.

Plaintiff has made no contention that the appraisal process was ineffective or illusory.  Plaintiff merely states that prior to Defendant's demand for appraisal, Defendant had "sufficient information to determine the appropriate amount due to Plaintiff under the terms of the insurance policy."  Plaintiff provides no facts to support this conclusion.  All that has been provided to the court is that Defendant did not agree with the dollar amount Plaintiff claimed it was owed under the policy (this amount was never revealed to the court in the pleadings or exhibits).  As discussed above, mere inability to agree to a dollar amount does not prove bad faith on the part of the insurer.  So long as the insurer exercised good faith in attempting to adjust the claim, the insurer will not be held to have violated §️ 624.155.  *Vest*, 753 So. 2d at 1275.  Here, the appraisal process worked – Plaintiff was able to recover more than the amount that Defendant initially thought was owed under the policy, but the final amount of the appraisal was a full thirty-percent below the policy limits.  This shows that there truly was an active dispute

between the parties as to the just amount of the loss.  The Civil Remedy Statute is intended to encourage insurance companies to resolve disputes with their insureds without judicial intervention.  *Tristar Lodging, Inc. v. Arch Specialty Ins. Co.*, 434 F. Supp 2d 1286, 1298 (M.D. Fla. 2006); *Nationwide Prop. & Cas. Ins. v. Bobinski*, 776 So. 2d 1047, 1049 (Fla. 5th DCA 2001) ("[I]t maintains the better policy of this state to encourage insurance companies to resolve conflicts and claims quickly and efficiently without judicial intervention.  Arbitration and appraisal are alternative methods of dispute resolution that provide quick and less expensive resolution of conflicts.").  Thus, I would have to completely disregard the intention of the Civil Remedy Statute to apply it in the manner urged by Plaintiff.  I am unwilling to do so.

As a result, I find as a matter of law that Defendant was not acting in bad faith in its dealings with Plaintiff.  As such, Plaintiff's claims for relief under Section 624.155 (Civil Remedy) and Section 626.9541 (Unfair or Deceptive Acts or Practices Prohibited) of the Florida Statutes are meritless and do not entitle Plaintiff to a jury trial.

### 3. Specific Damages

### a. Attorney's Fees

Plaintiff's claim for attorney's fees is based upon Florida Statute § 624.155. Plaintiff provides no authority for its assertion of this claim. As discussed above, as a matter of law Plaintiff is not entitled to recover under this statute. But for the statutory notice, there would be no legal right for the Plaintiff to attorney's fees under the insurance contract.

Even if the court were to broaden the scope of the suit and allow Plaintiff to sue under the general insurance statute, § 627.428 (The Insurance Contract – Attorney's Fees), attorney's fees are not warranted where the insurer pays the appraisal award before the insured files suit. *Bobinski*, 776 So. 2d at 1048-49. Further, attorney's fees are not warranted where the insurance company did not wrongfully withhold the insured's benefits. *Tristar*, 434 F. Supp 2d at 1300 ("[A]bsent a showing that the benefits were wrongfully withheld, counsel is in no position to claim a denial of coverage, and thus, no attorney's fee is properly awardable."). Finally, attorney's fees should not be awarded when the insurance company "timely participated in the appraisal and paid the award without the need for court intervention." *Federated Nat'l Ins. Co. v. Esposito*, 937 So. 2d 199, 200 (Fla. 4th DCA 2006).

In this case, Defendant paid in full the appraisal award seven weeks before suit was filed by Plaintiff in state court. Since the appraisal process was used to

properly determine Plaintiff's benefits, the benefits were not improperly withheld. Finally, Defendant timely participated in the appraisal process without the need for judicial intervention.  Thus, Plaintiff is not entitled to attorney's fees.

### b. Umpire and Appraiser Fees

Plaintiff claims it is entitled to umpire and appraiser based upon the language of Florida Statute § 624.155(8) which provides for the recovery of damages "which are a reasonably foreseeable result of a specified violation of this section . . ."  Plaintiff provides no authority for this assertion.  As discussed previously, as a matter of law Plaintiff is not entitled to recover under this statute. Without the Civil Remedy Statute, Plaintiff is not entitled to umpire and appraiser fees.

Florida courts have ruled that the provisions contained in an insurance policy are controlling with regard to awarding costs associated with appraisal.  *Allstate Ins. Co. v. Martinez*, 790 So. 2d 1151 (Fla. 3rd DCA 2001) (reversing an award for appraisal costs where the policy stated that "each party is to pay the appraiser it chooses and equally bear all other expenses, including that of the umpire.").

The policy issued by Defendant to Plaintiff clearly states "[e]ach party will: 1) [p]ay its chosen appraiser; and 2) [b]ear the other expenses of the appraisal and umpire equally."  Therefore, under Florida law, Plaintiff is not entitled to

reimbursement for the fee paid to its appraisers, or for the costs and expenses

associated with the appraisal, because the clear and unambiguous language of the

policy bars such recovery.  The umpire fees are unrecoverable for the same

reasons.

### c. Interest on the Appraisal Award

Plaintiff's claim for interest on the appraisal award is based upon Florida

Statute § 624.155.  Plaintiff provides no authority for its assertion of this claim.  As

discussed previously, as a matter of law Plaintiff is not entitled to recover under

this statute.  Without the Civil Remedy Statute, Plaintiff is not entitled to interest

on the appraisal award.

The Eleventh Circuit has held in a number of cases that the language of the

effective policy is controlling in determining when payment is due, and that

prejudgment interest begins to accrue if payment is not made by that date.  *Golden*

*Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n.*, 117 F.3d

1328 (11th Cir. 1997); *see also Columbia Cas. Co. v. Southern Flapjacks, Inc.*, 868

F.2d 1217 (11th Cir. 1989).  In *Columbia*, the insurance policy provided that "[a]ll

adjusted claims shall be paid to the Assured within thirty (30) days after filing of

satisfactory proof of loss."  *Id.* at 1219.  Since the policy did not contain any

further conditions on payment, appraisal interest was deemed to accrue after the expiration of the thirty-day period.

The due date for payment may be altered by terms of the policy.  In *Underwriters Ins. Co. v. Kirkland*, 490 So. 2d 149 (Fla. 1st DCA 1986), the policy at issue provided that losses were "payable within 60 days after Underwriters receives proof of a loss and: (a) reaches an agreement with its insured, or (b) there is an entry of a final judgment, or (c) there is a filing of an appraisal award with the insurer."  Because the policy conditioned payment and entry of an appraisal award, any accrued interest was deemed to accrue from sixty days after the appraisal award was entered. *See also Aetna Cas. & Sur. Co. v. Frank Medina Trading Co,*, 529 So. 2d 730, 731 (holding the same).  It is clear from these decisions that Florida state courts defer to the language of the effective policy in determining timeliness of payments.

Under the Building and Personal Property Coverage Form of the policy effective during the loss, Section IV, titled "Loss Conditions," Subpart E ("Loss Payment") Subpart (6) states:

> We will pay for covered loss or damage within 30 days after we
> receive the sworn proof of loss, if you have complied with all of
> the terms of this Coverage Part and:
>     1. We have reached agreement with you on the amount of
> loss; or
>     2. An appraisal award has been made.

This language is similar to the policy in *Kirkland* in that it requires wither an agreement between the parties or an appraisal award prior to payment being due. Further, it stipulates that the award is not due until thirty days after the appraisal award is rendered.  In this case, the undisputed facts show that Defendant paid the appraisal award in full within thirty days of determination.  As a result, Plaintiff is not entitled to interest on the appraisal award.

### d. DSI Bills

Plaintiff claims it is entitled to DSI bills not awarded to Plaintiff by the appraisal award as contractual damages based upon the language of Florida Statute § 624.155(8).  Plaintiff provides no authority for this assertion.  As discussed previously, as a matter of law Plaintiff is not entitled to recover under this statute. Without the Civil Remedy Statute, Plaintiff is not entitled to the DSI bills not awarded to Plaintiff by the appraisal award as contractual damages.

The language of the policy in effect at the time of the loss provided that "a decision agreed to by any two [of the parties' respective appraisers and umpire] will be binding."  As discussed above, both Florida and Federal courts have given great deference to the policy provisions when determining damages under an effective policy.  *See Martinez, Golden Door, Columbia,* and *Kirkland supra.*

Further, the umpire had the opportunity to consider all potential damages associated with Plaintiff's claim during the appraisal process.

During the appraisal process, the undisputed facts show that Plaintiff's appraiser had access to all relevant documents and materials on which to base his recommendation.  In fact, all of the DSI invoices, both paid and unpaid, were presented to the umpire through Plaintiff's appraiser.  The umpire, in turn, considered all relevant evidence presented to him and computed an award in consideration of the DSI bills.  Therefore, all of DSI's unpaid invoices were considered by the umpire and subsumed into the umpire's award, which was paid by Defendant in full.  As the umpire's award is the final, binding determination on the parties relating to any outstanding monies owed, and the award was accepted by both parties, no further damages remain to be paid and Plaintiff is not entitled to further compensation.

**e. Allegations Contained in Plaintiff's Amended Complaint Not Identified in the Civil Remedy Notice.**

Plaintiff concedes that it cannot maintain an action for violation of those provisions of the Florida Civil Remedy Statute that were not included in its Civil Remedy Notice.  As such, no further discussion is required.

**f. Public Adjuster Fees**

Plaintiff has provided no legal authority as to why it is entitled to Public Adjuster fees other than its claim that it is entitled to relief under Florida Statute § 624.155(8). As discussed previously, as a matter of law Plaintiff is not entitled to recover under this statute.  With no other support for its claim, I find that Plaintiff is not entitled to Public Adjuster fees.

## IV. CONCLUSION

Defendant's Motion for Summary Judgment (Doc. 55) is **GRANTED**.  The Clerk is directed to enter judgment for Defendant.

**ORDERED** on August 21, 2008.

/S/ Richard Smoak_____
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**